IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| CHRISTOPHER JAMES CAREY, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-22-0782 |
| BALTIMORE COUNTY, MD, *et al.*, | * | |
| *Defendants*. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM ORDER

This case features several civil rights and common law tort claims arising from a traffic stop conducted by members of the Baltimore County Police Department ("BCPD"). On the morning of December 11, 2020, Plaintiff Christopher J. Carey ("Carey" or "Plaintiff") was stopped and searched by BCPD officers while driving on Liberty Road in Randallstown, Maryland. (Compl. ¶ 16, ECF No. 1.) Carey, who was stopped after the officers observed issues with the emblem and tags on his vehicle, alleges that he was detained for as long as an hour while the officers requested a K-9 unit to conduct a narcotics search. (*Id.* ¶¶ 18-2–19-2.) No contraband was found in his vehicle, and no criminal charges were ever filed against him. (*Id.* ¶¶ 21–24.)

Subsequently, Carey filed an eight-count Complaint against Officers Emily Wolford, B. Remmers, and Michael Leatherman, Police Chief Melissa R. Hyatt, and Baltimore County, Maryland (collectively, "Defendants"), alleging that these Defendants violated his rights under the Maryland Constitution, the United States Constitution, and the common law of Maryland

1

by prolonging the traffic stop in order to conduct a narcotics search without legal justification. (*Id.* ¶¶ 1, 36–63.) Now pending is Defendants' Motion to Dismiss (ECF No. 7). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). As Carey does not plead sufficient factual support for the allegations in his Complaint, Defendants' Motion to Dismiss (ECF No. 7) is hereby **GRANTED**, and Carey's Complaint is **DISMISSED WITHOUT PREJUDICE.** Carey shall be granted leave to amend his Complaint within 30 days of the date of this opinion.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Except where otherwise indicated, the following facts are derived from Plaintiff's Complaint, and accepted as true for the purpose of Defendants' Motion to Dismiss.

Plaintiff Christopher J. Carey is an African American resident of the State of Maryland, who resides in Randallstown, a community in Baltimore County, Maryland. (Compl. ¶ 7.) Defendant Baltimore County is a governmental entity and political subdivision organized under the laws of Maryland. (*Id.* ¶ 8.) During the events at issue in this case, Defendant Melissa R. Hyatt was Chief of Police for the Baltimore County Police Department and was responsible for the Department's day-to-day activities. (*Id.* ¶ 9.) At all relevant times, Defendants Emily Wolford, B. Remmers, and Michael Leatherman were law enforcement officers employed by the BCPD. (*Id.* ¶¶ 10–12.)

In the morning hours of December 11, 2020, Officer Wolford stopped Carey while he was driving a recently-purchased Lexus down Liberty Road in Randallstown. (*Id.* ¶ 16.) According to the Complaint, Officer Wolford pulled Carey over for "no identifiable reason," after he "appeared to have noticed the lone African American . . . operating the Lexus," suggesting the officer lacked probable cause to conduct a traffic stop. (*See id.* ¶¶ 18-1, 19-1.[1]) In his Response Brief in opposition to Defendants' Motion to Dismiss, Carey acknowledges that Officer Wolford stopped his vehicle after observing that the car's Lexus emblem had been swapped for a Toyota emblem, and that tags on his car did not match the vehicle's registration on file. (Pl.'s Resp. Br. 1–2, ECF No. 8; *id.* at 6 ("Admittedly, [Officer Wolford] had reasonable suspicion to stop Carey.") However, while Carey no longer disputes the reason for this stop, the gravamen of his complaint is that the stop was extended for almost an hour while officers conducted a K-9 search for narcotics. (*See* Compl. ¶¶ 18-2; Pl.'s Resp. Br. 4 ("[I]t is a legal stop that became an illegal detention because of an unreasonable delay.").)

After approaching Carey's vehicle, Officer Wolford requested Plaintiff's license, registration, and car insurance. (Compl. ¶ 19-1.) Carey provided his license and registration as requested but was unable to produce his insurance documents. (Defs.' Mot. Dismiss 2–3.) Officer Wolford returned to her car and requested a canine unit to perform a narcotics search. (Compl. ¶¶ 19-2–21.) After a delay, Officers Remmers and Leatherman arrived on the scene, where they advised Carey that there was a problem with his registration and requested additional information on his vehicle's insurance. (*Id.* ¶ 20.)

---

[1] The Complaint erroneously includes two paragraphs with the numbers 18 and 19. This Court will distinguish these paragraphs by referencing the second paragraph 18 as "¶ 18-2," and the second paragraph 19 as "¶ 19-2."

Thereafter, the officers searched Carey and his vehicle for narcotics. (*Id.* ¶¶ 19-2–25.) Officer Leatherman ordered Plaintiff to step out of his vehicle and performed a full body search by frisking him and retrieving items from his pockets. (*Id.* ¶¶ 21, 24.) Officer Remmers, "acting without permission or probable cause," searched the vehicle with his dog. (*Id.* ¶ 22.) Officer Wolford separately searched the cabin and the trunk. (*Id.* ¶ 23.) All three searches were "completely unproductive," and "nothing illegal was removed or retrieved." (*Id.* ¶¶ 21–24.) In his Complaint, Plaintiff alleges that the entire encounter lasted "approximately an hour." (*Id.* ¶ 25.) In his Response Brief, Plaintiff further alleges that Officers Leatherman and Remmers arrived on the scene approximately 45 minutes after the stop was initiated, and that Officer Wolford's body camera was not recording during this time. (Pl.'s Resp. Br. 2–3.) In either event, the Officers allowed Plaintiff to leave with a verbal warning and instructed him to look into problems with his vehicle registration. (Compl. ¶ 25.)

Carey's claims center on whether the officers had legal justification to extend the traffic stop and request a canine unit to perform a narcotics search. Carey claims that this search was racially motivated, alleging that the officers "unreasonably and impermissibly" detained him for an extended period of time and requested a narcotics search "without permission, consent, or probable cause, because Plaintiff was an African American male operating a vehicle in Baltimore County." (*Id.* ¶¶ 18-2, 26.) He claims that "the Baltimore County Police Department has both a reputation and a policy of disparately treating African American males differently than Caucasian males due to their race by regularly subjecting [them] to illegal traffic stops and subsequent searches and seizures." (*Id.* ¶ 28.) Defendants counter that Officer Leatherman's body camera footage clearly demonstrates that Carey consented to a search. (Defs.' Mot.

Dismiss 4.) Defendants also claim that the officers had probable cause, as Carey's vehicle registration expired in 2018, that the badges on the vehicle had been changed from a Lexus to a Toyota, and he had been driving without insurance. (*Id.* at 2–4.)

Plaintiff subsequently filed the instant Complaint bringing eight claims against Officers Wolford, Remmers, and Leatherman, Chief Hyatt, and Baltimore County. Specifically, he alleges the following Counts: (I) assault and battery against Defendants Remmers and Leatherman; (II) illegal detention against Defendants Wolford, Remmers, and Leatherman; (III) false imprisonment against Defendants Wolford, Remmers, and Leatherman; (IV) a claim under 42 U.S.C. § 1983 against all Defendants, asserting that the officers violated his Fourth Amendment right to be secure from unreasonable search and seizure; (V) a claim against Defendants Wolford, Remmers, and Leatherman under 42 U.S.C. § 1983, alleging an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution;[2] (VI) intentional infliction of emotional distress against Defendants Wolford, Remmers, and Leatherman, and against Defendant Baltimore County; (VII) a claim against Defendants Wolford, Remmers, and Leatherman, and against Defendant Baltimore County, for violations of Carey's due process rights under Article 26 of the Maryland Declaration of Rights; and (VIII) a claim against Chief Hyatt and Baltimore County under 42 U.S.C. § 1983, alleging negligent training and supervision amounting to deliberate indifference. Defendants have filed a motion to dismiss.

This motion is ripe for review.

---

[2] As alleged in the Complaint, Count V appears virtually indistinguishable from Count IV. Both Counts bring claims under 42 U.S.C. § 1983 alleging violations of Mr. Carey's Fourth Amendment right to be free from unreasonable searches and seizures. (Compl. ¶¶ 49–53.)

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotations omitted).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

While ruling on a motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). A court may not consider factual allegations set forth in responsive pleadings to a

dispositive motion. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (citing *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F. Supp. 518, 526 (S.D.N.Y. 1977)). Thus, a plaintiff may not cure a defect in their complaint through opposition briefing and this Court will instead rely on the facts alleged in the complaint itself. *See Yampierre v. Balt. Police Dep't*, No. ELH-21-1209, 2022 WL 3577268, at *17 (D. Md. Aug. 18, 2022) (citing *De Simone v. VSL Pharms.*, 36 F.4th 518, 531 (4th Cir. 2022)).

## ANALYSIS

Through the instant Complaint, Carey brings eight claims against the Defendants. However, Carey consents to the dismissal of all claims against Baltimore County and Chief Hyatt. (Pl.'s Resp. Br. 1 n.1.) Accordingly, Defendants Baltimore County and Melissa R. Hyatt are dismissed from this action, and Count VIII, which is alleged only against these defendants, is dismissed. (*See* Compl. ¶¶ 60–63.) Additionally, Carey consents to the dismissal of Count VI, alleging intentional infliction of emotional distress. (Pl.'s Resp. Br. 1 n.1.) Accordingly, Count VI is likewise dismissed. The following Counts remain operative: Count I, assault and battery (Compl. ¶¶ 36–38); Count II, illegal detention (*id.* ¶¶ 39–44); Count III, false imprisonment (*id.* ¶¶ 45–48-1[3]); Counts IV and V, 42 U.S.C. § 1983 claims for violations of Carey's Fourth Amendment rights (*id.* ¶¶ 49-1–53); and Count VII, a claim for violations of Carey's due

---

[3] The Complaint erroneously includes two paragraphs with the numbers 48 and 49. This Court will distinguish these paragraphs by referencing the second paragraph 48 as "¶ 48-2," and the second paragraph 49 as "¶ 49-2."

process rights under Article 26 of the Maryland Declaration of Rights, (*id.* ¶¶ 57–59). Defendants seek the dismissal of all remaining counts.

Although each of these counts is a distinct claim with distinct elements, each requires Carey to plausibly allege the absence of probable cause or legal justification as a threshold consideration. Under Maryland law, torts such as "[f]alse imprisonment, false arrest, and assault and battery 'can only occur when there is no legal authority or justification for the arresting officer's actions.'" *Hines v. French*, 157 Md. App. 536, 551 (2004) (quoting *Williams v. Prince George's Cnty.*, 112 Md. App. 526, 554 (1996)); *see also Ashton v. Brown*, 339 Md. 70, 120 (1995); *Great Atl. & Pac. Tea Co. v. Paul*, 256 Md. 643, 654 (1970) ("The necessary elements of a case for false imprisonment are a deprivation of the liberty of another without his consent and without legal justification."). Similarly, a § 1983 claim alleging the deprivation of Fourth Amendment rights based on a traffic stop will not succeed where officers had probable cause to conduct the challenged seizure. *See Brown v. Gilmore*, 278 F.3d 362, 367–68 (4th Cir. 2002); *see also Whren v. United States*, 517 U.S. 806, 809–10 (1996); *Delaware v. Prouse*, 440 U.S. 648, 653–55 (1979). As noted above, Plaintiff does not dispute the constitutionality of the stop,[4] but instead claims that the officers did not have legal justification to prolong the stop by detaining him for approximately an hour to search his vehicle for narcotics. (Pl.'s Resp. Br. 3–8.) Defendants counter that the officers had probable cause to conduct the traffic stop, and that Carey consented to the narcotics search. (Defs.' Mot. Dismiss 7–8.)

---

[4] Plaintiff appears to have abandoned his contention that the traffic stop itself was unlawful. In the Complaint, the Plaintiff asserts that Officer Wolford initiated the traffic stop "for no identifiable reason," suggesting that the officer lacked probable cause. (Compl. ¶ 18-1.) However, Mr. Carey makes no factual allegations to support this conclusion, and acknowledges in his Response Brief that Officer Wolford had probable cause to conduct the initial traffic stop. (Pl.'s Resp. Br. 1–2, 4, 6.)

In his Complaint, Carey appears to allege that the Defendants' actions were motivated by racial animus, claiming he was searched "without permission, consent, or probable cause, because Plaintiff was an African American male operating a vehicle in Baltimore County." (Compl. ¶¶ 18-2, 26, 28.) To state a claim that a traffic stop was racially motivated, a plaintiff must show that "the law enforcement practice 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *United States v. Suarez*, 321 F. App'x 302, 305 (4th Cir. 2009) (quoting *United States v. Armstrong*, 517 U.S. 456, 465 (1996)). "To establish a discriminatory effect, the Plaintiff 'must show that the law enforcement practice was not enforced against similarly situated individuals of a different race.'" *Artiga Carrero v. Farrelly*, 270 F. Supp. 3d 851, 869 (D. Md. 2017) (quoting *Suarez*, 321 F. App'x at 305). The plaintiff also "has the burden of proving 'the existence of purposeful discrimination.'" *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987) (quoting *Whitus v. Georgia*, 385 U.S. 545, 550 (1967)). This Court has previously observed that "[o]fficers are entitled to a presumption that they have not violated equal protection, and therefore the standard for proving such a claim is 'a demanding one.'" *Artiga Carrero*, 270 F. Supp. 3d at 869 (quoting *Armstrong*, 517 U.S. at 463).

This case is distinguishable from others where the plaintiff has plausibly alleged racial animus in traffic enforcement. In *Artiga Carrero*, Chief Judge Bredar found that a Latina woman had successful stated a claim under § 1983 for violations of her Fourth, Fifth, and Fourteenth Amendment rights. *Id.* at 868–69. There, the plaintiff alleged that a Baltimore County officer pulled her over based solely on her Hispanic appearance to assess her immigration status. *Id.* at 869. According to her complaint, the officer's vehicle was stopped next to the plaintiff's at a red light and, after the officer looked over and noticed that he was idling next to a woman

of Hispanic heritage, he effectuated a traffic stop of her vehicle. *Id.* When the plaintiff asked why she had been pulled over, the officer responded that "he had stopped her because she did not have insurance." *Id.* Throughout the duration of the stop, however, the officer never asked the plaintiff for her insurance documents. *Id.* Instead, the officer proceeded to question the plaintiff on her family history and immigration status—interrogating her on a subject that was beyond of the scope of the stop, and directly related to her racial and ethnic background. *Id.* at 869, 870.[5]

In comparison, Carey fails to articulate any facts which would support his allegation that either the initial stop or the narcotics search were racially motivated. As noted above, Plaintiff alleges Officer Wolford "apparently concluded" that he was transporting controlled substances solely "because Plaintiff was a single operator African-American male operating a vehicle in Baltimore County." (*See* Compl. ¶¶ 18-1, 18-2, 26, 28.) In support of this assertion, Carey states in a conclusory manner that the BCPD "has both a reputation and a policy of disparately treating African American males differently than Caucasian males due to their race by regularly subjecting African American males to illegal traffic stops [and unconstitutional searches and seizures]." (Compl. ¶ 28.)

These facts fall far short of the allegations that were found sufficient in *Artiga Carrero*. In that case, the plaintiff's claim that her traffic stop was racially motivated was supported by her allegations that the officer questioned her on her immigration status and family heritage rather than her insurance, the stated reason for the stop. *Artiga Carrero*, 270 F. Supp. 3d at 869.

---

[5] Following this questioning, she was arrested and taken to the detention center, where she was taken into ICE custody. *Id.* She remained in immigration custody for six weeks. *Id.*

As currently alleged, Carey's claim that Officer Wolford was motivated by racial animus is speculative, as he offers no supporting facts regarding the officers' conduct or their reason for ordering a narcotics search. Carey has not alleged that he was asked any questions relating to his race, nor has he pointed to any other circumstances to support his allegations regarding the officer's state of mind. He likewise offers no facts to support his claim that BCPD has a policy of unconstitutionally stopping African American men on account of their race—such as examples of similar cases or comparators that could be used to establish "the existence of purposeful discrimination." *Cf. McCleskey*, 481 U.S. at 292 (quoting *Whitus*, 385 U.S. at 550). Accordingly, Carey has not plausibly alleged a racially motivated search.

As he has not plausibly alleged racial animus, Plaintiff fails to plead that the officers lacked "legal authority or justification" to detain him for the requested K-9 narcotics search. A traffic stop is constitutionally "reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810; *accord State v. Green*, 375 Md. 595, 609 (2003); *Ferris v. State*, 355 Md. 356, 369 (1999). A traffic stop remains reasonable so long as it is limited in duration and scope to accomplish the purpose of the stop. *See Rodriguez v. United States*, 575 U.S. 348, 350–51 (2015) (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). A stop that is constitutional at its inception may become unconstitutional if it is unreasonably prolonged, or if officers exceed the initial purpose of the stop by searching for evidence of a crime that they do not have reasonable suspicion to believe occurred. *Id.*; *accord United States v. Williams*, 808 F.3d 238, 245–46 (4th Cir. 2015) ("[T]o extend the detention of a motorist beyond the time necessary to accomplish a traffic stop's purpose, the authorities must either possess 'reasonable suspicion or receive the driver's consent.'" (quoting *United States v.*

*Digiovanni*, 650 F.3d 498, 507 (4th Cir. 2011))). In his Response Brief, Carey concedes that the initial purpose of the traffic stop was lawful—specifically, to check the Plaintiff's registration and to determine whether he was a licensed driver. (Pl.'s Resp. Br. 6.) However, he asserts that this search became unreasonable when he was detained for an additional forty minutes while the officers waited for a K-9 unit to arrive, as the officers lacked probable cause to believe that he was transporting controlled substances. (*Id.* at 6–7.)

Although Carey articulates these claims in response to Defendants' Motion to Dismiss, these assertions are not properly alleged in his Complaint. As noted above, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc.*, 745 F.2d at 1107 (citing *Jacobson*, 445 F. Supp. at 526). "To prove an absence of probable cause, [the plaintiff] must allege a set of facts which made it unjustifiable for a reasonable officer to conclude that [he] was violating the [law]." *Brown v. Gilmore*, 278 F.3d 362, 368 (4th Cir. 2002); *accord Stutzman v. Krenik*, 350 F. Supp. 3d 356, 377 (D. Md. 2018). Carey's operative Complaint fails to articulate sufficient details surrounding the nature of the stop and the reasons it was extended, asserting only that the search ended approximately one hour from when it began. (Compl. ¶¶ 25, 47.) As Carey has failed to properly allege facts suggesting that the officers lacked reasonable suspicion to extend the traffic stop for a narcotics search, he has not adequately pled that the officers lacked "legal authority or justification" to conduct the search. *Cf. Hines*, 157 Md. App. at 551. Absent such a showing, Carey fails to state claims for assault and battery,[6] illegal detention, false imprisonment, deprivations of his Fourth

---

[6] In Count I, Mr. Carey brings a claim for assault and battery against the individual Officers on the grounds that the search of his person was unlawful, and thus any contact was unwanted and inflicted without justification. Defendants note that the "[t]ort of battery requires touching without

12

Amendment rights, and deprivations of his rights under Article 26 of the Maryland Declaration of Rights. Accordingly, Defendants' Motion to Dismiss (ECF No. 7) is **GRANTED** as to all remaining counts.

## LEAVE TO AMEND

For the foregoing reasons, Plaintiff Christopher J. Carey's Complaint is **DISMISSED** pursuant to Rule 12(b)(6) for failure to state a claim. As a general rule, leave to amend a complaint to address deficiencies in an original complaint is freely granted pursuant to Rule 15(a). *See* Schwarzer, Wallace & Wagstaffe, *Federal Civil Procedure* § 9:286. Indeed, there is authority that a plaintiff should be given at least one opportunity to amend a complaint before a dismissal of the case with prejudice. *See Silva v. Bieluch*, 351 F.3d 1045, 1048 (11th Cir. 2003). However, there is also authority that leave to amend does not need to be granted unless requested by the plaintiff. *See* Central Laborers' Pension Fund v. Integrated Elec. Servs. Inc., 497 F.3d 546, 555-56 (5th Cir. 2007); *see also* Schwarzer, Wallace & Wagstaffe § 9:287.10. Additionally, leave to amend may be denied if such amendment is deemed futile. Schwarzer, Wallace & Wagstaffe § 9:294.1; *see also Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

This Court concludes that leave to amend is appropriate. Plaintiff brought eight counts against the Defendants, and voluntarily dismissed two of those Counts. (Pl.'s Resp. Br. 1 n.1.)

---

consent," and assert that the body camera footage submitted in support of their Motion to Dismiss shows that Plaintiff consented to the search of his person. (Defs.' Mot. Dismiss 8.) Because the body camera footage submitted by the Defendants is not "integral" to the Complaint, this Court declines to consider it and will instead rely on the allegations articulated in the Complaint. *Cf. Chesapeake Bay Found., Inc.*, 794 F. Supp. 2d at 611 (holding that a document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" (emphasis omitted) (citation omitted)).

His remaining Counts are subject to dismissal on account of his failure to plausibly allege that the officers lacked "legal authority or justification" to conduct the traffic stop or the ensuing search. *Hines*, 157 Md. App. at 551. This is a quintessentially factual issue, requiring Carey to "allege a set of facts which made it unjustifiable for a reasonable officer to conclude that [he] was violating the [law]." *Brown v. Gilmore*, 278 F.3d at 368. If Plaintiff possesses facts to cure the deficiencies highlighted in this Memorandum Opinion, he may file an Amended Complaint within thirty days of this Opinion—specifically, by December 15, 2022.[7] Such an Amended Complaint may still be subject to dismissal by reason of repeated failure to cure deficiencies or futility of the amendment. *See Abagninin*, 545 F.3d at 742. Accordingly, Plaintiff's Complaint shall be dismissed **WITHOUT PREJUDICE** at this time. If an Amended Complaint is not filed by December 15, 2022, the Clerk of this Court is instructed to close this case with a dismissal with prejudice.

---

[7] The time within which plaintiff must serve and file the amended complaint is ordinarily set by the court. Schwarzer, Wallace & Wagstaffe § 9:289.

## CONCLUSION

For the reasons stated above, it is this 14th day of November, 2022, hereby

**ORDERED** that Defendants' Motion to Dismiss (ECF No. 7) is **GRANTED**. Specifically:

1. Defendants' Motion is **GRANTED** as to Counts I, II, III, IV, V, VI, VII, and VIII, and those Counts are dismissed **WITHOUT PREJUDICE**;

2. With the consent of the Plaintiff, Baltimore County and Chief Hyatt are dismissed as parties to this action;

3. Plaintiff shall be granted leave to file an Amended Complaint within thirty (30) days of this opinion, i.e., by December 15, 2022; and

4. The Clerk of the Court shall transmit copies of this memorandum order to the parties.

Dated: November 15, 2022

_____/s/_____
Richard D. Bennett
United States District Judge