IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| CHRISTOPHER JAMES CAREY, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-22-0782 |
| EMILY WOLFORD, *et al.*, | * | |
| *Defendants*. | * | |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

## MEMORANDUM OPINION

In this case, Plaintiff Christopher James Carey ("Plaintiff" or "Carey"), an African American male, claims that an initially lawful traffic stop was unconstitutionally extended for one hour as a result of racial profiling. Specifically, the case features several civil rights and common law tort claims arising from the traffic stop conducted by members of the Baltimore County Police Department ("BCPD"). On the morning of December 11, 2020, Carey was stopped and searched by BCPD officers while driving on Liberty Road in Randallstown, Maryland, after an officer observed issues with the vehicle's rear emblem and tags. (Am. Compl. ¶¶ 13–15, ECF No. 11.) Plaintiff alleges that he was detained for approximately one hour while the officers requested a canine unit to conduct a narcotics search. (*Id.* ¶¶ 26, 33.) No contraband was found in Plaintiff's vehicle or person, and Carey was allowed to proceed on his way with a verbal warning. (*Id.* ¶¶ 28–29, 31–33.) For the reasons that follow, Defendants' Motion to Dismiss Amended Complaint or for Summary Judgment (ECF No. 16), construed as a Motion to Dismiss, is DENIED at this stage and the case shall proceed

to discovery.

Consequently, Carey instituted this action on April 1, 2022, filing an eight-count Complaint against Baltimore County, Maryland and four parties related to BCPD.[1]  (Compl., ECF No. 1.)  The defendants named in Plaintiff's original Complaint filed a Motion to Dismiss, which this Court granted.  (Mot. to Dismiss, ECF No. 7; Mem. Order, ECF No. 10.)  In granting the motion, this Court dismissed Plaintiff's original Complaint without prejudice and with leave to amend, finding that Carey had failed to articulate (1) any facts which would support his allegations that either the initial stop or the narcotics search were racially motivated and (2) sufficient details surrounding the nature of the stop and the reasons it was extended. (Mem. Order 10, 12, ECF No. 10.)

Subsequently, Plaintiff filed a six-count Amended Complaint against Defendants Emily Wolford ("Officer Wolford"), B. Remmers ("Officer Remmers"), and Michael Leatherman ("Officer Leatherman"), individually and as police officers for the BCPD (collectively, "Defendants").  (ECF No. 11.)  Plaintiff's Amended Complaint asserts state law claims for assault and battery against Officer Leatherman (Count I),[2] false imprisonment against all Defendants (Count III), and violations of Maryland's Declaration of Rights against all

---

[1] Plaintiff's original Complaint asserted claims against two additional defendants, Baltimore County, Maryland, and Melissa R. Hyatt, who was Chief of Police for the BCPD at the time of the traffic stop.  (Compl. ¶¶ 8–9, ECF No. 1.)  Pursuant to this Court's Memorandum Order dated November 15, 2022, Baltimore County and Hyatt were dismissed as parties to this action with Plaintiff's consent.  (Mem. Order 15, ECF No. 10.)

[2] Assault and battery are separate and distinct torts under Maryland law.  *Ford v. Douglas*, 799 A.2d 448, 450–51 (Md. App. 2002).  A claim for assault under Maryland law is subject to the applicable one-year statute of limitations.  *See* MD. CODE ANN., CTS. & JUD. PROC. § 5-105 ("An action for assault, libel, or slander shall be filed within one year from the date it accrues.").  This case arises solely from an incident occurring on December 11, 2020.  (Compl., ECF No. 1.)  Because the limitations period for assault expired on December 11, 2021, and Plaintiff did not file this action until April 1, 2022, (*id.*), Plaintiff's claim in Count I will be treated as a claim for battery.

2

Defendants (Count VI).   In addition, Plaintiff asserts federal constitutional violations of Plaintiff's Fourth Amendment rights against all Defendants (Counts IV and V), and federal and state constitutional violations of Plaintiff's rights under the Fourth Amendment and its corollary under Maryland's constitution against all Defendants (Count II).[3]

Presently pending is Defendants' Motion to Dismiss Amended Complaint or for Summary Judgment.  (ECF No. 16.)  The parties' submissions have been reviewed, and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons that follow, Defendants' Motion to Dismiss Amended Complaint or for Summary Judgment (ECF No. 16), construed as a Motion to Dismiss, is DENIED at this stage and the case shall proceed to discovery.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff."  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).  Except where otherwise indicated, the following facts are derived from Plaintiff's Amended Complaint, and accepted as true for the purpose of Defendant's Motion to Dismiss.

At approximately 10:30 AM on the morning of December 11, 2020, Carey, an African American male resident of Baltimore County, Maryland, was driving a recently-purchased 1998

---

[3] As alleged in the Amended Complaint, Count II, entitled "Illegal Detention," is based on violations of the "[Fourth] Amendment . . . and the laws of Maryland."  (ECF No. 11 at ¶ 51).  As Defendants correctly note in their Motion to Dismiss Amended Complaint or for Summary Judgment, (ECF No. 16 at 10–11 n.9), illegal detention is not a tort in Maryland.  As such, this Court will understand "the laws of Maryland" to mean Article 26 of the Maryland Declaration of Rights.

Lexus down Liberty Road in Randallstown, Maryland.  (Am. Compl. ¶¶ 12–13, ECF No. 11.)
According to his Amended Complaint, the previous owner of the vehicle switched the rear
Lexus emblem to a Toyota emblem.  (*Id.* ¶ 14.)  Upon observing this discrepancy, Officer
Wolford executed a traffic stop.  (*Id.* ¶¶ 14–15.)  Initially, Carey concedes that Officer Wolford
lawfully stopped him in the first instance, but maintains that the stop was "much longer than
necessary so that the Defendant[s] could summon a canine to conduct a search of his
vehicle . . . because [he] was a black man operating a vehicle in Baltimore County."  (*Id.* ¶ 34;
Pl.'s Resp. Br. 4, ECF No. 20.)

Officer Wolford approached Plaintiff's vehicle and requested his license and
registration.  (Am. Compl. ¶ 16, ECF No. 11.)  Carey asserts that he "readily provided all
documents requested," (*id.* ¶ 17), and Officer Wolford returned to her car and requested a
canine unit to perform a narcotics search.  (*Id.* ¶ 18.)  According to Carey, Officer Wolford
did not ask him any further questions and remained in her patrol car until the canine unit
arrived.  (*Id.* ¶ 21.)

In his Amended Complaint, Carey asserts that Officers Remmers and Leatherman
arrived on the scene "40 minutes later."  (*Id.* ¶ 20.)   Upon arrival, Officer Leatherman
"investigated the alleged registration issues" by walking between Carey and Officer Wolford's
vehicles before eventually asking Plaintiff to exit his vehicle.  (*Id.* ¶¶ 22–23.)  Thereafter, "[o]ne
of the officers . . . conducted a dog sniff" inspection of Plaintiff's vehicle.  (*Id.* ¶ 26.)  Carey
alleges that Officer Wolford "searched the cabin and trunk of [his] car" even though "the dog
failed to alert on anything."  (*Id.* ¶¶ 26–27.)  Plaintiff alleges that "at no time did [Officer]
Leatherman request permission to conduct a search of [his] vehicle."  (*Id.* ¶ 25.)  Thereafter,

Officer Leatherman asked Carey if he could search him and Plaintiff "reluctantly complied . . . by raising his hands above his head." (*Id.* ¶¶ 28–29.)

Ultimately, no contraband was found in Carey's vehicle or person, and the officers allowed him to leave with a verbal warning "over an hour" after he was first stopped. (*Id.* ¶¶ 28–29, 31–33.) Carey alleges that the officers searched his vehicle and person despite him being "unarmed, non-threatening," and cooperative. (*Id.* ¶ 32.)

Approximately sixteen months after this incident, Carey commenced this action on April 1, 2022. (Compl., ECF No. 1.) The defendants named in Plaintiff's original Complaint filed a Motion to Dismiss, which this Court granted. (Mot. to Dismiss, ECF No. 7; Mem. Order, ECF No. 10.) After Plaintiff filed his six-count Amended Complaint against Defendants, (Am. Compl., ECF No. 11), Defendants filed the instant Motion to Dismiss Amended Complaint or for Summary Judgment. (ECF No. 16.) This motion is ripe for review.

## STANDARD OF REVIEW

Defendants have filed a Motion to Dismiss Plaintiff's Amended Complaint, or, in the alternative, for Summary Judgment. This Court will construe Defendants' Motion as a Motion to Dismiss, as the Fourth Circuit has stated that "[s]ummary judgment before discovery forces the non-moving party into a fencing match without a sword or mask." *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P 8(a)(2). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and

not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotations omitted).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim.  *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

When ruling on a motion to dismiss, a court may only "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing *Sec'y of State for Def. v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)).  A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights

6

asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC,* 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citing *Walker v. S.W.I.F.T. SCRL,* 517 F. Supp. 2d 801, 86 (E.D. Va. 2007)). In support of their Motion to Dismiss or for Summary Judgment, Defendants submitted eight exhibits consisting of body worn camera footage, an audio recording, a transmission transcript, scheduling logs, and affidavits.  However, these exhibits simply provide detail and context to the traffic stop, and do not "give rise to the legal rights asserted" by Plaintiff.  *Chesapeake Bay Found., Inc.,* 794 F. Supp. 2d at 611.  As Plaintiff has not yet conducted discovery of his own, this Court will not consider the Defendants' exhibits, and as noted above, will construe Defendants' motion only as a Motion to Dismiss.  *Cf. Rohan v. Networks Presentation, LLC.,* 175 F. Supp. 2d 806, 809 (D. Md. 2001) (converting a motion to dismiss to a motion for summary judgment only after determining it necessary to consider extrinsic documents).

## ANALYSIS

Through his Amended Complaint, Carey asserts state law claims for battery against Officer Leatherman (Count I), false imprisonment against all Defendants (Count III), and violations of Maryland's Declaration of Rights against all Defendants (Count VI).  In addition, Plaintiff asserts federal constitutional violations of Plaintiff's Fourth Amendment rights against all Defendants (Counts IV and V), and federal and state constitutional violations of Plaintiff's rights under the Fourth Amendment and its corollary under Maryland's constitution against all Defendants (Count II).  Defendants seek dismissal of all counts.

### I.      Legal Justification for Prolonging the Traffic Stop

While each of the six counts is a distinct claim with distinct elements, each claim hinges on Plaintiff's ability to prove the absence of probable cause or legal justification.  Under

Maryland law, torts such as "[f]alse imprisonment, false arrest and assault and battery 'can only occur when there is no legal authority or justification for the arresting officer's actions.'" *Hines v. French*, 852 A.2d 1047, 1055 (Md. App. 2004) (quoting *Williams v. Prince George's Cnty.*, 685 A.2d 884, 898 (Md. App. 1996)); *see also Ashton v. Brown*, 660 A.2d 447, 471–72 (Md. 1995); *Great Atl. & Pac. Tea Co. v. Paul*, 261 A.2d 731, 738 (Md. 1970) ("The necessary elements of a case for false imprisonment are a deprivation of the liberty of another without his consent and without legal justification." (citing *Safeway Stores Inc. v. Barrack*, 122 A.2d 457, 460 (Md. 1956))). Similarly, a claim alleging the deprivation of rights under the Fourth Amendment and Maryland's parallel provision based on a traffic stop will not succeed if officers had probable cause to conduct the challenged seizure. *Brown v. Gilmore*, 278 F.3d 362, 367–68 (4th Cir. 2002); *Whren v. United States*, 517 U.S. 806, 809–10 (1996); *Delaware v. Prouse*, 440 U.S. 648, 653–55 (1979). Plaintiff does not dispute the constitutionality of the initial stop, but instead claims that the officers did not have legal justification to prolong the stop by detaining him for allegedly one hour to search his vehicle for narcotics. (Pl.'s Resp. Br. 4–6, ECF No. 20.)

A traffic stop is constitutionally "reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810; *accord State v. Green*, 375 Md. 595, 609 (2003); *Ferris v. State*, 355 Md. 356, 369 (1999). A traffic stop remains reasonable so long as it is limited in duration and scope to accomplish the purpose of the stop. *See Rodriguez v. United States*, 575 U.S. 348, 350–51 (2015) (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). A stop that is constitutional at its inception may become unconstitutional if it is unreasonably prolonged, or if officers exceed the initial purpose of the stop by searching for

8

evidence of a crime that they do not have reasonable suspicion to believe occurred.[4]  *Id.*; *accord*

*United States v. Williams*, 808 F.3d 238, 245–46 (4th Cir. 2015) ("[T]o extend the detention of a

motorist beyond the time necessary to accomplish a traffic stop's purpose, the authorities must

either possess 'reasonable suspicion or receive the driver's consent.'" (quoting *United States v.*

*Digiovanni*, 650 F.3d 498, 507 (4th Cir. 2011))).

In his Amended Complaint, Plaintiff alleges that the Defendants "inappropriately

detained [him] on a traffic stop much longer than necessary" and did not have legal

justification to prolong the stop.  (Am. Compl. ¶ 34, ECF No. 11; Pl.'s Resp. Br. 4–6, ECF

No. 20.)  According to Carey, the absence of "legal authority or justification" to detain him

for approximately forty-five minutes while the parties waited for the requested K-9 narcotics

search gives rise to the instant claims.  (Am. Compl. ¶¶ 20–23, ECF No. 11.)  Carey specifically

alleges that Officer Wolford requested his license and registration before returning to her

patrol car, and then forty-five minutes elapsed before he was next addressed by Defendants.

(*Id.* ¶¶ 16–23.)  He further claims that "over an hour" had passed when he was "let[] off with

a verbal warning."  (*Id.* ¶ 33.)  Pursuant to the Supreme Court's opinion in *Rodriguez*, the precise

issue in this case is the duration of the traffic stop and the reasons proffered by the

Defendants.   While issues apparently arose regarding Carey's license, registration, and

insurance, Carey contends that these issues did not justify the length of the stop or awaiting

for a canine search.  Consequently, Plaintiff states a plausible claim that Defendants unlawfully

prolonged the traffic stop.

---

[4] Neither party has alleged facts indicating that Defendants had reasonable suspicion that Plaintiff was
engaging in criminal activity beyond traffic infractions.

Defendants suggest that the stop was not prolonged beyond the mission of the traffic stop because the dog arrived while it was still ongoing.  (Mem. Supp. 17, ECF No. 16-1.) However, construing the timeline "in the light most favorable" to Carey, and because Defendants relied on exhibits that were not integral to the claims, this Court proceeds according to Plaintiff's allegations that the dog arrived forty minutes after the stop began with no intervening communication between Carey and the Defendants.  *Wikimedia Found.*, 857 F.3d at 208 (citing *SD3, LLC*, 801 F.3d at 422).  Therefore, because Plaintiff properly alleged facts suggesting that the officers lacked reasonable suspicion to extend the traffic stop for a narcotics search and the stop may have been unlawfully prolonged, Plaintiff has adequately pled that the officers lacked "legal authority or justification" to conduct the search.[5]  *Cf. Hines*, 852 A.2d at 1055–56.

## II.     Qualified Immunity

Defendants alternatively argue that they have qualified immunity as to Counts II, IV, and V, and therefore should be entitled to judgment in their favor. (Mem. Supp. 23–24, ECF No. 16-1.)  "Qualified immunity shields government officials 'who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.'"  *Hunter v. Town of Mocksville*, 789 F.3d 389, 401 (4th Cir. 2015) (quoting *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011)).  The doctrine "protects government

---

[5] Plaintiff has also adequately pled that he did not consent to the detention lasting longer than necessary to complete the traffic stop's purposes. "[T]o extend the detention of a motorist beyond the time necessary to accomplish a traffic stop's purpose, the authorities must either possess reasonable suspicion or receive the driver's consent." *Williams*, 808 F.3d at 245–46 (internal quotations omitted). Defendants similarly rely upon their submitted exhibits to assert Plaintiff consented to the dog sniff and body search, but Plaintiff explicitly states "[a]t no time did Defendant Leatherman request permission to conduct a search of Plaintiff's vehicle." (Am. Compl. ¶ 24, ECF No. 11.)  Accordingly, Defendants cannot rely on Plaintiff's alleged consent to justify prolonging the traffic stop at this juncture.

officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Livingston v. Kehagias*, 803 Fed. App'x 673, 678 (4th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Wilson v. Prince George's Cnty.*, 893 F.3d 213, 219 (4th Cir. 2018) (quoting *Pearson*, 555 U.S. at 231); *accord Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (observing that the doctrine "gives government officials breathing room to make reasonable but mistaken judgments").

"To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the facts illustrate that the officer violated the plaintiff's constitutional right . . . , and (2) whether the right was clearly established at the time of the alleged event such that 'a reasonable officer would have understood that his conduct violated the asserted right.'" *Humbert v. Mayor & City Council*, 866 F.3d 546, 555 (4th Cir. 2017) (quoting *Miller v. Prince George's Cnty*, 475 F.3d 621, 627 (4th Cir. 2007)).  Qualified immunity may be raised in a Rule 12(b)(6) motion, but "when asserted at this early stage in the proceedings, 'the defense faces a formidable hurdle' and 'is usually not successful.'" *Owens*, 767 F.3d at 396 (quoting *Field Day, LLC v. Cnty. of Suffolk,* 463 F.3d 167, 191–92 (2d Cir. 2006)).  "This is so because dismissal under Rule 12(b)(6) is appropriate only if a plaintiff fails to state a claim that is *plausible* on its face." *Id.* (citing *Iqbal*, 556 U.S. at 678) (emphasis in original).

Having found that Plaintiff's allegations state a plausible claim under Counts II, IV, and V, Defendants' qualified immunity claim turns on whether Plaintiff can show it was clearly established at the time Defendants stopped Carey that prolonging a traffic stop to conduct a canine narcotics search was unconstitutional.  Defendants insist that is not the case, (Mem. Supp. 24, ECF No. 16-1), however the Supreme Court made clear in *Rodriguez* that prolonged traffic stops where law enforcement exceeds the scope of the original "mission" without reasonable suspicion are unlawful.  *Rodriguez*, 575 U.S. at 357.  Therefore, Defendants' qualified immunity claim depends upon more factual questions surrounding the duration and events of the traffic stop.  Consequently, at this stage in the litigation, this Court is unable to make a definitive ruling as to Defendants' qualified immunity claim.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Amended Complaint or for Summary Judgment (ECF No. 16), construed as a Motion to Dismiss, is DENIED.

A separate Order follows.


Dated: May 5, 2023

_____
/s/
Richard D. Bennett
United States District Judge
