## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CHRISTOPHER JAMES CAREY,

     Plaintiff,

v.

EMILY WOLFORD *et al.*,

     Defendants.

Civil No. 22-0782-BAH

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Christopher James Carey ("Plaintiff") filed this suit against Police Officers Emily Wolford, B. Remmers, and Michael Leatherman of the Baltimore County Police Department (collectively "Defendants"), alleging constitutional civil rights claims as well as common law tort claims arising out of a traffic stop in December 2020.  ECF 11.  Pending before the Court is Defendants' motion for summary judgment.  ECF 39.  Plaintiff filed an opposition, ECF 42, and Defendants filed a reply, ECF 45.  All filings include memoranda of law and exhibits.[1]  The Court has reviewed all relevant filings and finds that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2023).  Accordingly, for the reasons stated below, Defendants' motion for summary judgment, ECF 39, is **GRANTED**.

## I.   <u>BACKGROUND</u>

Plaintiff brought this case based on events that unfolded at a traffic stop on December 11, 2020.  ECF 11, at 3.  As Plaintiff was driving in Baltimore County just before 10:30 AM that

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

morning, Officer Wolford relayed Plaintiff's license plate to the police dispatcher and learned that Plaintiff's registration was expired and that, despite Plaintiff's car displaying Toyota emblems, it was registered as a Lexus. ECF 39-2, at 1 ¶ 3; Def. Ex. A., ECF 16 ("Def. Ex. 16A"),[2] at 00:00–00:24. Officer Wolford pulled Plaintiff over at 10:25 AM based on this information. ECF 39-2, at 1 ¶ 4; ECF 16-4, at 1. Officer Leatherman responded as a backup officer and arrived at the stop at 10:29 AM. ECF 16-4, at 1.

Officer Leatherman approached Plaintiff's car and spoke to Plaintiff for several minutes about his expired registration and license, as well as the discrepancy between the make of his car listed on his expired registration and the emblems on the car. Def. Ex. A., ECF 7 ("Def. Ex. 7A"),[3] at 00:30–01:43; Def. Ex. B, ECF 7 ("Def. Ex. 7B"),[4] at 00:00–00:58. Plaintiff was compliant and cooperative, and admitted that he knew his license was expired. Def. Ex. 7A, at 00:30–1:43. During this time, Officer Leatherman walked back and forth several times between Plaintiff's car and Officer Wolford, who remained in her vehicle. *See id.* at 00–01:43 (showing Officer Leatherman twice walking back and forth between Officer Wolford's car and Plaintiff's car). Communications between Officer Wolford and dispatch revealed that Maryland Motor Vehicle Administration ("MVA") had no record of Plaintiff having a license, only that he was eligible for a license. ECF 16-7, at 1.

At approximately 10:32 AM, Office Leatherman unsuccessfully attempted to read the

---

[2] This piece of evidence was received by the Court as a physical exhibit and is an audio recording of conversation between Officer Wolford and dispatcher. Def. Ex. 16A.

[3] This piece of evidence was received by the Court as a physical exhibit and shows footage from Officer Leatherman's body camera beginning at 10:29 AM. Def. Ex. 7A.

[4] This piece of evidence was received by the Court as a physical exhibit and shows footage from Officer Leatherman's body camera beginning at 10:31 AM. Def. Ex. 7B.

vehicle identification number ("VIN") underneath the vehicle's front windshield. Def. Ex. 7B., at 00:58–01:09; *see also* ECF 16-9, at 2 ¶ 7 (describing the time corresponding to the beginning of each body camera video). He asked Plaintiff if he had anything else with the VIN on it. *Id.* at 01:05–01:09. Plaintiff searched his center console and glove compartment, removing the unaffixed front license plate[5] and an expired vehicle registration card, the latter of which Plaintiff provided to Officer Leatherman. *Id.* at 01:09–01:52. Upon further inquiry from Officer Leatherman, Plaintiff explained that the vehicle was registered in his mother's name, and Officer Leatherman informed him that the registration was expired. Def. Ex. C., ECF 7 ("Def. Ex. 7C"),[6] at 00:35–00:57. Officer Wolford entered a Traffic Violation Warning for Plaintiff related to his expired registration. ECF 42-1, at 1–2.

At approximately 10:41 AM, Officer Leatherman asked Plaintiff if he had an insurance card. Def. Ex. 7C, at 00:57–01:02. Plaintiff did not have an insurance card on hand, but called his mother and then informed Officer Leatherman that his mother would send the insurance policy number to Plaintiff's phone. *Id.* at 01:02–02:45. At approximately 10:47 AM, Plaintiff's mother returned the call and Plaintiff handed the phone to Officer Leatherman. *Id.* at 07:23–08:20. Plaintiff's mother explained that the car was registered in her name and that the vehicle was insured through State Farm. *Id.* at 08:20–08:35. She stated she would contact her insurance agent and have them send the information to Plaintiff's phone. *Id.* at 08:50–09:32.

As the investigation into the issue of the vehicle's insurance status was ongoing, Officer

---

[5] The vehicle was not displaying a front license plate, *see* Def. Ex. D, ECF 16 ("Def. Ex. 16D"), at 02:02–02:08, as required by Maryland law. Md. Code Ann., Transp. § 13-411(a) ("On a vehicle for which two registration plates are required, one plate shall be attached on the front and the other on the rear of the vehicle.").

[6] This piece of evidence was received by the Court as a physical exhibit and shows footage from Officer Leatherman's body camera beginning at 10:40 AM. Def. Ex. 7C.

Remmers was dispatched to the scene for a canine sniff inspection at approximately 10:36 AM. ECF 16-4, at 1.  Upon Officer Remmers's arrival seven minutes later, Officer Leatherman asked Plaintiff to step out of the vehicle, and Plaintiff cooperated.  Def. Ex. 7C, at 03:38–03:50.  At approximately 10:44 AM, Officer Remmers began the canine sniff inspection of Plaintiff's vehicle.  *Id.* at 03:50–04:00; Def. Ex. D, ECF 16 ("Def. Ex. 16D"),[7] at 00:50–00:55.  At the same time, Officer Wolford informed Plaintiff that MVA records showed that he did not have a license and that his vehicle registration expired several years ago.  Def. Ex. 7C, at 03:55–04:10.  She asked Plaintiff if someone could come pick him up, to which he responded "no."  *Id.* at 04:50–04:55. This conversation about Plaintiff's registration and license continued throughout the canine sniff. *See id.* at 03:55–05:45.  After the canine officer alerted on Plaintiff's vehicle (indicated by sitting next to the car), Officer Wolford began searching Plaintiff's vehicle.  Def. Ex. 7D, at 02:23–02:30; Def. Ex. 7C, at 07:22–13:41; ECF 16-6, at 2 ¶ 8.  Officer Leatherman asked Plaintiff if he could search him, and Plaintiff raised his arms above his head and said, "Sure, go for it."  Def. Ex. 7C, at 13:45–13:50.

In total, the traffic stop lasted approximately thirty-two minutes.  *See* ECF 16-4, at 1.  No contraband was found in Plaintiff's vehicle or person.  *See* Def. Ex. 7C, at 14:40–14:52.  The officers allowed Plaintiff to leave with a verbal warning and instructed him to resolve the problems with his license and the vehicle's registration with the MVA.  *Id.* at 14:40–17:06.

Plaintiff instituted this action on April 1, 2022, filing an eight-count complaint against Baltimore County, Maryland, and four parties related to the Baltimore County Police Department

[7] This piece of evidence was received by the Court as a physical exhibit and shows footage from Officer Remmers's body camera beginning at 10:43 AM.  Def. Ex. 16D.

(BCPD).[8]   ECF 1.   The defendants named in Plaintiff's original complaint filed a motion to dismiss, which this Court granted.  *See* ECF 7; ECF 10, at 15.  In granting the motion, this Court dismissed Plaintiff's original Complaint without prejudice and with leave to amend, ECF 10, at 15, and Plaintiff subsequently filed the operative six-count amended complaint against only the current Defendants.  ECF 11.  Defendants moved to dismiss, ECF 16, and this Court denied the motion.  ECF 29.

Plaintiff's amended complaint brings six counts against Defendants.  ECF 11, at 7–11. Counts two,[9] four, five, and six allege violations of Plaintiff's right to be free from unreasonable searches and seizures under the Fourth Amendment and its corollary in the Maryland State Constitution, Article 26 of the Maryland Declaration of Rights, against all Defendants; count one alleges battery against Officer Leatherman alone;[10] and count three alleges false imprisonment against all Defendants.  *Id.*  Defendants now move for summary judgment on all counts.  ECF 39.

---

[8] Plaintiff's original Complaint asserted claims against two additional defendants, Baltimore County, Maryland, and Melissa R. Hyatt, who was Chief of Police for the BCPD at the time of the traffic stop.  ECF 1, at 1–2 ¶¶ 8–9.  Pursuant to this Court's Memorandum Order dated November 15, 2022, Baltimore County and Hyatt were dismissed as parties to this action with the consent of Plaintiff.  ECF 10, at 15.

[9] As explained in this Court's opinion addressing Defendants' motion to dismiss, "illegal detention" is not a tort in Maryland.  *See* ECF 28, at 3 n.3.  Therefore, the Court construes this count, which is based on violations of the "[Fourth] Amendment . . . and the laws of Maryland," ECF 11, at 8, as stating a claim for a Fourth Amendment violation and a violation of Article 26 of the Maryland Declaration of Rights.

[10] As explained in this Court's opinion denying Defendants' prior motion to dismiss, assault claims in Maryland are subject to a one-year statute of limitations, barring any assault claim resulting from the events that occurred on December 11, 2020, as Plaintiff filed his initial complaint in this action on April 1, 2022.  *See* ECF 28, at 2 n.2 (citing Md. Code Ann.., Cts. & Jud. Proc. § 5-105, and ECF 1).  As such, count one is construed only as a claim for battery, which is a tort distinct from assault under Maryland law.  *Id.* (citing *Ford v. Douglas*, 799 A.2d 448, 450–51 (Md. App. 2002)).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

"Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists." *Progressive Am. Ins. Co. v. Jireh House, Inc.*, 603 F. Supp. 3d 369, 373 (E.D. Va. 2022) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam); *Scott v. Harris*, 550 U.S. 372, 378 (2007), and the Court "may not make credibility determinations or weigh the evidence," *Progressive Am. Ins. Co.*, 603 F. Supp. 3d at 373 (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007)). For this reason, summary judgment ordinarily is inappropriate when there is conflicting evidence because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black &*

*Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).

At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 2003)). "The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, are insufficient to withstand a summary judgment motion." *Progressive Am. Ins. Co.*, 603 F. Supp. 3d at 373 (citing *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020)).

## III.   ANALYSIS

Defendants claim that they are entitled to summary judgment because (1) the initial traffic stop was legal; (2) the stop was not impermissibly lengthened; (3) the canine officer alerted on the car, rendering the subsequent searches of the vehicle and Plaintiff's person reasonable; and (4) Defendants are entitled to qualified immunity.[11]   ECF 39-1, at 9–25.   Plaintiff argues that the canine search impermissibly extended the stop, that the searches of Plaintiff and his vehicle were unreasonable under the Fourth Amendment, and that Plaintiff did not consent to the search of his person. ECF 42, at 2–6.

Each of Plaintiff's claims rest upon whether Defendants' actions were reasonable under

---

[11] Defendants also argue that Officer Remmers is entitled to summary judgment on all counts separately, as there are no allegations or evidence that he was involved in the stop beyond conducting the legal canine sniff. ECF 39-1, at 23. Plaintiff does not dispute this argument beyond disputing the reasonableness of the canine sniff. *See* ECF 42, at 2–8 (making no argument that Officer Remmers was in any way involved in the underlying events beyond serving as the canine handler). Because the Court finds that the canine sniff did not impermissibly extend the stop and was therefore reasonable, as explained below, summary judgment is **GRANTED** in favor of Officer Remmers.

the Fourth Amendment. This applies to his claims brought under the United States Constitution, of course, but it applies with equal force to his claims brought under the Maryland Constitution. *Birchead v. State*, 566 A.2d 488, 492 (Md. 1989) ("Article 26 of the Maryland Constitution is *in pari materia* with the [F]ourth [A]mendment." (citation omitted)). Similarly, under Maryland law, "[f]alse imprisonment, false arrest, and assault and battery[12] [by a law enforcement officer] 'can only occur when there is no legal authority or justification for the arresting officer's actions.'" *Hines v. French*, 852 A.2d 1047, 1055 (Md. App. 2004) (quoting *Williams v. Prince George's Cnty.*, 685 A.2d 884, 898 (Md. App. 1996)). As such, though this Court would typically address the issue of qualified immunity before beginning a constitutional analysis, the Court will today dive headfirst into the question of whether Defendants' actions were reasonable under the Fourth Amendment. *See Rochon v. City of Angola*, 122 F.3d 319, 320 (5th Cir. 1997) ("If the court finds no constitutional injury, it need not address the issue of qualified immunity." (citation omitted)).

### A. Defendants' initial stop of Plaintiff was lawful, and it was not unreasonably extended by the dog sniff.

A traffic stop "constitutes a 'seizure' under the Fourth Amendment and is thus subject to a reasonableness requirement." *United States v. Williams*, 808 F.3d 238, 245 (4th Cir. 2015) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)). A traffic stop is reasonable under the Fourth Amendment if (1) it was "legitimate at its inception" and (2) "the officer's actions during the seizure were reasonably related in scope to the basis for the traffic stop." *United States v. Bowman*, 884 F.3d 200, 209 (4th Cir. 2018) (quoting first *United States v. Hill*, 852 F.3d 377, 381 (4th Cir. 2017), then quoting *United States v. Williams*, 808 F.3d 238, 245 (4th Cir. 2015)). Plaintiff

---

[12] This axiom does not apply when the tort claim is based upon a claim of excessive force. *See Williams v. Prince George's Cnty.*, 685 A.2d 884, 898 (Md. App. 1996). Here, though, Plaintiff bases his battery claim solely on the unreasonableness of the search; there are no allegations of excessive force. *See* ECF 11, at 7.

concedes that the initial traffic stop in this case was constitutional. *See* ECF 42, at 2 (acknowledging that the "stop [was] at first constitutional"). Thus, whether the stop violated Plaintiff's Fourth Amendment rights turns on whether Defendants' "actions during the seizure were reasonably related in scope to the basis for the traffic stop." *Bowman*, 884 F.3d at 209.

During a traffic stop, "an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.'" *Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (alteration in *Rodriguez*) (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)). These "ordinary inquiries" include tasks such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* A "dog sniff," however, is not part of these "ordinary inquiries," and is reasonable only if the officer either develops reasonable suspicion to believe that the dog sniff will lead probable cause of a crime or, as is relevant here, if the dog sniff does not prolong the length of the traffic stop. *See id.* at 357–58. If an officer develops probable cause to believe that evidence of a crime is present either in the car or on the person of one of the occupants of the car, the officer is justified in conducting a search, and doing so does not impermissibly expand the bounds of the stop. *See United States v. Palmer*, 820 F.3d 640, 651–52 (4th Cir. 2016).

Here, the evidence demonstrates that Defendants were still engaged in "ordinary inquiries" related to the traffic stop when the dog sniff occurred, and thus, the dog sniff did not prolong the duration of the stop. Even though Officer Wolford had already written a warning for Plaintiff regarding his expired registration, Defendants were waiting on Plaintiff to provide information relating to the car's insurance when the dog sniff occurred and were still waiting when the dog alerted. *See* Def. Ex. 7C, at 07:23–09:32 (showing that Plaintiff's mother did not call Plaintiff regarding the car insurance until roughly 10:47 AM and that she stated she was still waiting on her

insurance agent to send her the information); Def. Ex. 7D, at 02:23–02:30 (showing that the canine

officer alerted on the car at roughly 10:45 AM). Plaintiff does not dispute that he was waiting for

his mother to send him information relating to the insurance policy during the dog sniff, and the

evidence leaves no room for debate on this point. *See* ECF 42, at 1–8 (failing to address the issue

of the phone call and the insurance inquiry at all). As such, the dog sniff did not lengthen the time

of the stop and did not render the stop unreasonable.

> **B.     Defendants' searches of both Plaintiff and the vehicle were reasonable.**

Plaintiff concedes that once the canine officer altered on the car, the subsequent search of

the car was reasonable. ECF 42, at 5 ("If the Court finds the length of [Plaintiff's] detention

reasonable, then, admittedly, the search of [Plaintiff's] car was constitutional based on the dog

sniff alert."). Plaintiff asserts, however, that Defendants did not have probable cause to search his

person and that he did not consent to such a search, rendering it unreasonable. *Id.* The Court need

not determine whether Plaintiff voluntarily consented to the search of his person because

Defendants had probable cause to search Plaintiff.

Where the driver is the sole occupant of the vehicle, courts have found that a positive alert

from a drug detection dog provides probable cause for the search of that individual.[13] *See State v.

Funkhouser*, 782 A.2d 387, 402 (Md. App. 2001). Officer Remmers's worn body camera footage

shows that the dog "alerted" on the car sitting by the driver's side front door, following a "head

snap" and "repeated, excited interest in the door seams," all of which was "behavior [that] would

---

[13] The Supreme Court has made clear that the reliability of a dog sniff alert need not be taken as a
given. *See Florida v. Harris*, 568 U.S. 237, 247–48 (2013). When the reliability of the canine in
question is challenged, probable cause is only established if the totality of the circumstances
surrounding the alert, including evidence of the dog's training and certification, "would make a
reasonably prudent person think that a search would reveal contraband or evidence of a crime."
*Id.* at 248. Here, Plaintiff has not called into question the sufficiency of the dog's alert, so the
Court need not delve into the canine officer's qualifications. *See* ECF 42, at 2–8 (raising no
question relating to the reliability of the dog sniff).

indicate to any BCPD K-9 officer that the dog had alerted to the presence of drugs in the car and that an interior search of the car was appropriate." Def. Ex. 16D, at 01:20–2:30; ECF 16-6, at 2 ¶ 8. Accordingly, Defendants had probable cause to search Plaintiff's person, and doing so did not violate his rights.

## IV.    CONCLUSION

In total, the traffic stop lasted approximately thirty-two minutes. *See* ECF 16-4, at 1. Based on the undisputed record evidence, Defendants' actions were routine measures under the circumstances and there is no evidence to suggest that the traffic stop exceeded the permissible length. The officers' actions were reasonably related to investigating the issues with Plaintiff's registration, and the basis for the stop mushroomed into other inquiries that each took time. The searches of Plaintiff's vehicle and his person were each based on probable cause and were reasonable under the Fourth Amendment. Therefore, each of Plaintiff's claims fail, and summary judgment must be entered in favor of Defendants on all counts.

For the foregoing reasons, Defendants' motion for summary judgment, ECF 39, is **GRANTED.**

A separate implementing Order will issue.

Dated: <u>July 29, 2024</u>

_____/s/_____
Brendan A. Hurson
United States District Judge